The Honorable Bobby L. Hogue State Representative P.O. Box 97 Jonesboro, Arkansas 72401
Dear Representative Hogue:
This is in response to your request for an opinion regarding rural fire districts organized pursuant to Act 742 of 1977. You have asked, specifically, what liability the county would incur if one of the districts went bankrupt. You have also asked whether it would be legal for a county Quorum Court to pass an ordinance that would require an area annexed to a city to continue to pay the fire district assessments for a period of, for instance, five (5) years to prevent the district from becoming insolvent.
Section 1 of Amendment 55 to the Arkansas Constitution provides that a county, acting through its Quorum Court, "may exercise local legislative authority not denied by the Constitution or by law." Section 106 of Act 742 of 1977, which was enacted as enabling legislation subsequent to the adoption of Amendment 55, provided for the establishment of subordinate service districts by county Quorum Courts. [Note: Although Section 106 of Act 742 was subsequently repealed, the validity of ordinances establishing subordinate service districts pursuant thereto has been upheld. Eaton v. McCuen, 273 Ark. 154, 617 S.W.2d 341 (1981)] I assume that your questions are asked in relation to districts formed under either Section 106 of Act 742 of 1977 or the subsequent act authorizing these districts, Act 874 of 1981.
Act 874 of 1981, which is codified as Ark. Stat. Ann. 17-4109 (Cum. Supp. 1985), defines a subordinate service district as "a county service organization established to provide one (1) or more county services or additions to county services." 17-4109(3). Such districts may be created to provide, inter alia, emergency services, including fire prevention and protection services. 17-4109(3)(a). Indeed, it appears that the County has an obligation to provide these services under Ark. Stat. Ann. 17-3802(2)(d) (Repl. 1980) which states in pertinent part:
 A county government, acting through the Quorum Court, shall provide through ordinance for the following necessary services for its citizens: (d) emergency services, including: fire prevention and protection services. . . .
It is also clear under Ark. Stat. Ann. 17-4101 that subordinate service districts emerged from an effort to make county governments "more responsive to the service needs of the people."
A review of these provisions indicates that a subordinate improvement district is not a corporate body separate and distinct from county government. Rather, it is a "service organization" administered "directly as a part of the office of the county judge, as a part of a department with or without an advisory or administrative board, or as a separate department with or without an advisory or administrative board." 17-4109(10)(a). Although the facts presented in your request offer no guidance with respect to the means of providing services, it may be presumed that contracts in this regard are entered into on behalf of the county either through the county judge or an administrative board. It is also significant to not that funds raised through service charges "shall be maintained in the county treasury," 17-4109(10)(e), that disbursements are made "only upon voucher or claim presented to and approved by the county judge," Id., and that the budget of the district "shall be appropriated as other funds of the county." 17-4109(10)(b).
It may be reasonably concluded based upon the foregoing that a county may incur liability following the bankruptcy of a fire district, assuming that the resources of the district are insufficient to satisfy the district's obligations. This conclusion is reached based upon a construction of the applicable statutory enactments since there is no case law on point. These service districts were apparently organized as an effective means of providing essential county services. The cost of the services would in all likelihood be deemed to be county expenses. While it is obviously envisioned that service charges will be sufficient to defray the expenses involved, we find no provisions effectively limiting the county's ultimate liability or responsibility in this regard. Indeed, it is significant to note that in the event the district is dissolved, provisions must be made for "[t]he honoring of any bond, debt, contract, obligation or cause of action accrued or established under the subordinate district," as well as for the ". . . . adequate protection of legal rights of creditors." 17-4109(9)(d),(e).
In response to your second question involving assessments, we find no constitutional or statutory provisions limiting the Quorum Court's authority in this regard. The foregoing provisions regarding a district's dissolution may, in fact, be cited in support of the proposition that continued assessments may be collected as a means of honoring any outstanding obligations. Alternative provisions for the creation of fire protection districts should also be considered. Act 35 of 1979, codified as Ark. Stat. Ann. 20-923 et seq. (Supp. 1985) sets forth procedures for establishing such districts. While this Act does not "modify, amend, supersede, or otherwise affect" other laws and procedures for the creation of fire protection districts, provisions governing the levy and collection of assessed benefits offer some indication of legislative intent on this question. Ark. Stat. Ann. 20-942 is clear in mandating that these assessments continue to be levied and collected following dissolution of a district.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.